UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: ) | |
| ) | |
|    ANGELA JARRAR ) | Case No. 06-11447-SSM |
|    a/k/a Angela Jernigan ) | Chapter 13 |
|    a/k/a Angela Franklin ) | |
| ) | |
|                 Debtor ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court are the objections of Gerald M. O'Donnell, chapter 13 trustee, and the United States to confirmation of the plan filed by the debtor on November 15, 2006. A hearing was held on January 10, 2007, at which the debtor represented herself. For the reasons stated, the objections will be overruled and the plan, with one modification to properly address a secured claim, will be confirmed.

Background

A.

Angela Jarrar ("the debtor") is a technical operations manager for an information technology company. She filed a voluntary petition for adjustment of her debts under chapter 13 of the Bankruptcy Code in this court on November 1, 2006. The schedules filed with her petition listed $23,100 in secured debt, $64,348 in priority tax debt, and $210,134 in unsecured debts. On November 15, 2006, she filed a proposed plan under which she would pay the chapter 13 trustee $1,072 a month for 60 months. After payment of the trustee's statutory commission, all of the funds would go to pay the priority tax debt. The plan does not specifically address the debtor's

automobile loan; but since the contractual monthly payment is included as line item in the debtor's budget, the intent is rather clearly to pay the loan outside the plan.[1]

The chapter 13 trustee and the United States (on behalf of the Internal Revenue Service) filed timely objections to confirmation. The United States objected on the ground that the debtor had not filed a Federal income tax return for 2003, was not devoting all of her disposable income to the performance of the plan, and had not proposed the plan in good faith. The trustee objected on the ground that the debtor had not provided him with certain documents he requested at the meeting of creditors, that the debtor was not devoting her disposable income to the plan, and (paradoxically) that the plan was not feasible because the required monthly payment exceeded the debtor's monthly surplus income. By the time the hearing was held, the IRS had agreed with the debtor that she was not required to file a return for 2003, and the debtor had provided the trustee with the documents he had requested.[2] Thus the issues at the hearing were narrowed to disposable income, good faith, and feasibility.

B.

The debtor has been employed as a technical operations manager for a large information technology company for the last two and a half years. Her husband is a self-employed home-improvement contractor and handyman. Previously, the couple had owned and operated a coffee

---

[1] The creditor, Carmax Auto finance, filed a secured proof of claim (Claim No. 7) in the amount of $22,927.91, with no prepetition arrears. Carmax attached to its proof of claim a copy of the sales contract and the certificate of title showing its lien, but not the note or installment sales contract. As a result, the term of the loan and the interest rate being charged cannot be determined from the proof of claim.

[2] These consisted of settlement statements from the sale of two properties in North Carolina—where the debtor and her husband formerly lived—in September 2005. No significant proceeds were realized from those sales.

shop in North Carolina that was not successful. (The debtor testified that most of the debts listed on her schedules resulted from the failure of that business.) The couple has an 18-month old child. The debtor's schedules of monthly income and expenses (schedules I and J) reflect surplus income of $355.00:

| Income | |
|---|---:|
| Gross salary and commissions | $7,917 |
| Payroll taxes and social security | ($1,940) |
| Insurance | ($152) |
| Net Pay | $5,825 |
| Interest and dividends | $2 |
| Net from husband's business | $500 |
| Total | $6,327 |

| Expenses | |
|---|---:|
| Rent | $1,400 |
| Electricity and heating fuel | $200 |
| Telephone | $260 |
| Cable | $60 |
| Home maintenance | $160 |
| Food | $800 |
| Clothing | $180 |
| Laundry and dry cleaning | $60 |
| Medical and dental | $75 |
| Transportation | $270 |
| Recreation, newspapers, etc. | $280 |
| Charitable contributions | $131 |
| Renter's insurance | $50 |
| Automobile insurance | $140 |
| Personal property tax | $60 |
| Car payment | $453 |
| Childcare; educational materials | $1,393 |
| Total | $5,972 |
| | |
| Surplus | $355 |

In addition to schedules I and J, the debtor also completed and filed Official Form 22C, the statement of current monthly income and calculation of commitment period and disposable income for chapter 13 debtors required as a result of the amendments to the Bankruptcy Code made by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The form shows the debtor's current monthly income as $7,919; the annualized household

income as $101,028; and the statewide median annual income for a household of 3 as $63,177. The total deductions under the statutory "means test" computation is shown as $9,637, leaving a monthly disposable income of <u>minus</u> $1,718.

Both the debtor's plan and the Form 22C are predicated on the debtor's belief—mistaken, as it turns out—that the entirety of the approximately $51,000 IRS claim is a priority claim. As amended on the day of the hearing, the IRS proof of claim now asserts a priority claim of $4,055 and a general unsecured claim of $47,394. Thus, assuming the accuracy of the other listed tax claims, the total priority claims to be paid are $17,055 rather than $64,348. This has two implications. First, even without an increase in plan funding, unsecured claims will receive some payment. Second, the deduction on Line 49 of Form 22C for payment of priority claims is overstated and should be $284 (i.e., $17,055 divided by 60) rather than $1,072.

The debtor testified as to the accuracy and reasonableness of the expenses shown on schedule J and provided a payroll statement in support of the income figures. For the two-week pay period ending October 31, 2006, her gross salary was $3,958, and she earned commissions of $998. Payroll tax deductions totaled $1,272. Federal income taxes were withheld as married, with four deductions, while Virginia income taxes were withheld as single, with one deduction. The debtor testified that her husband's business lost approximately $5,000 in 2005 and would probably show a small loss for 2006, but that she expected, or at least hoped, that he would be able to clear $500 per month after expenses in the coming year. The couple own three automobiles. One is a 2003 Mercedes-Benz SUV which was purchased used in August 2006 to replace an 11-year old car and is used by the debtor to commute, to transport her daughter to child care, and to travel to customers' places of business. The monthly payment is $253. The

other two vehicles are a six-year old Hyundai Elantra which is paid off and a Chevrolet cargo van, both of which are used by the debtor's husband. The Elantra is fully paid off, and the husband makes the payments on the van as part of his business expenses. The child care center at which the debtor's daughter is enrolled charges $1,218 per month. The telephone expenses include long-distance charges for calls to the debtor's husband's family in Palestine as well as a cell-phone which he uses in his construction business. The actual amounts expended over the past six months average $273 a month.

## Discussion

The requirements for confirmation of a chapter 13 plan are set forth in § 1325, Bankruptcy Code. Only three of those are at issue in this case. The first is that the plan be proposed in good faith. § 1325(a)(3), Bankruptcy Code. The second is that the debtor devote her "projected disposable income" for the "applicable commitment period" to payment of unsecured claims under the plan. § 1325(b), Bankruptcy Code. And the third is that the debtor will be able to make all payments under the plan and to comply with the plan. § 1325(a)(6), Bankruptcy Code.

### A.

Because most of the testimony and argument at the hearing focused on the disposable income test, the court will first address that issue. This case, having been filed subsequent to October 17, 2005, is governed by the extensive changes to the Bankruptcy Code made by BAPCPA. Amazingly, however, neither the trustee nor the United States has addressed those changes and instead has analyzed the disposable income issue as though this case were governed by pre-BAPCPA law.

Since 1984, there has been a requirement that a debtor whose plan does not pay claims in full must devote his or her projected disposable income to the plan for 36 months. *See* § 1325(b), Bankruptcy Code.[3] The implementation of this requirement has traditionally centered on an analysis of the schedules of monthly income and expenses (schedules I and J) filed by the debtor, with the court making adjustments where the amounts shown were not substantiated or, in the case of expenses, were determined to be unreasonable, unnecessary or excessive. Such judgments were often, to say the least, highly subjective, with the result that expenses that might be allowed in one court, or by one judge of a particular court, might be disallowed by another. BAPCPA did not change this paradigm for debtors whose household income was less than the state-wide median income for a household of the same size. For above-median debtors, however, two significant changes were made. First, the period the debtor was required to pay his or her projected disposable income into the plan was increased from 36 months to 60 months (unless unsecured claims could be paid in full in a shorter period). § 1325(b)(4)(A)(ii), Bankruptcy Code. Second, disposable income was to be determined using the "means test" methodology implemented by BAPCPA for determining whether a debtor was eligible for chapter 7 relief. § 1325(b)(3), Bankruptcy Code. This computation begins with "current monthly income," which is an arithmetic average of the income (with certain exclusions, such as social security benefits) received in the six months preceding the filing of the bankruptcy

---

[3] Bankruptcy Amendments and Federal Judgeship Act of 1984 § 317, Pub.L. 98-353. If claims are not being paid in full, there is an additional requirement—referred to variously as the best interest of creditors test or liquidation test—that creditors receive at least as much in present value as they would receive in a chapter 7 liquidation. § 1325(a)(4), Bankruptcy Code. There is no assertion in this case, however, that creditors will receive less under the plan than in a chapter 7 liquidation.

petition. § 101(10A), Bankruptcy Code. Deducted from this are the allowances for housing, transportation, and other living expenses specified in the IRS collection standards as well as certain additional deductions specified in the statute. § 707(b)(2)(A) and (B), Bankruptcy Code. Chapter 13 debtors are required to file a calculation on Official Form 22C of current monthly income, and if that exceeds the statewide median income for a household of the same size, a calculation of disposable income. Interim Bankruptcy Rule 1007(b)(6).

The Form 22C filed by the debtor shows disposable income of <u>negative</u> $1,718 per month. Because the trustee and the United States proceeded as though the changes made by BAPCPA did not apply, no challenge was made to the computation. The court, however, has independently reviewed the debtor's computations and has noted several errors.[4] As previously observed, the deduction for priority claims is overstated because only a portion of the Internal Revenue Service's claim is priority. Based on the wage statement provided, the income and deductions are each slightly in error, primarily because the debtor arrived at monthly figures by multiplying the bi-weekly figures by 2 instead of multiplying by 26 pay periods per year and dividing by 12 months in the year, which yields a multiplier of 2.1667. Thus, salary and payroll tax deductions are both understated. The debtor evidently misread, or used an older version of, the IRS allowance tables, and in some categories claimed slightly less, and in others slightly more, than the amounts specified. One of the allowed deductions (for health and disability insurance) was properly claimed, but on the wrong line of the form.

The most problematical aspect of the computation involves the debtor's husband's income. First, the debtor, after including it for the purpose of calculating household income,

---

[4] This is no criticism of the debtor. The form, like the statute, is complex.

then improperly <u>deducted</u> it from the total, which would have been correct only if it was not regularly used to pay household expenses.  Since the scheduled household expenses exceed the debtor's income, the net income from the husband's business is necessarily being used to pay household expenses.  The real problem, however, is that the husband's business has <u>no</u> consistent record of generating income, with the result that <u>any</u> figure is little more than a stab in the dark.  Additionally, since the "current monthly income" specified by the means test is not current at all, but is rather the arithmetic average of income received in the six-month period <u>preceding</u> the bankruptcy filing, and since the debtor testified that her husband's business was expected to show a slight <u>loss</u> for the year 2006, there should probably be <u>no</u> addition to the debtor's current monthly income based on her husband's business.  Be that as it may, since the debtor has included the $500 figure in her computation, the court will do so as well.

      The court finds the $1,218 actually expended for child care to be reasonable and necessary, since it enables the debtor and her husband to work and has not been shown to be out of line for quality child care in this area. The additional $100 claimed for baby sitting was not clearly shown to be necessary and will not be included. The telecommunications charges will be reduced to what the debtor testified was $29.95 per month for basic service and the $70.53 per month that the exhibits show as the average monthly cost of the cell phone used in the husband's business.  The deduction for chapter 13 administration expense was incorrectly computed and will be corrected.  No evidence was presented to support the $75.00 per month for medical expenses, and that amount will therefore not be included.  The cost of $75.00 a month for the training materials purchased by the debtor to qualify for professional certifications that she testified was needed for advancement is substantiated by the exhibits.  But that cost would not be

incurred throughout the entire 60-month plan period. Rather, the court finds that training materials are likely to be purchased in no more than 12 of the 60 months covered by the plan, for a total of $900 divided by 60 months, or $15 per month over the term of the plan. Taking all these changes into account, the debtor's disposable income as computed under § 1325(b)(3) is minus $20:

| | | |
|---|---:|---:|
| Debtor's Income | | $ 8,576 |
| Spouse's Income | | $ 500 |
| Total | | $ 9,076 |
| | | |
| **Deductions** | | |
| National standards: food, clothing, etc. | | $1,368 |
| Local standards: housing: utilities | | $ 381 |
| Local standards: housing: rent | | $1,697 |
| Local standards: auto: operation | | $ 433 |
| Local standards: auto: ownership | $ 471 | |
| less monthly payment | $ 453 | |
| net auto ownership allowance | | $18 |
| Payroll taxes | | $ 2,757 |
| Education for employment | | $15 |
| Childcare | | $ 1,218 |
| Health and disability insurance | | $ 168 |
| Telecommunications | | $ 100 |
| Charitable contributions | | $ 131 |
| Secured debt payments | | $ 453 |
| Payments on priority claims | | $ 284 |
| Average monthly plan payment | $1,072 | |
| Admin expense multiplier | 6.7% | |
| Admin expense | | $ 72 |
| Total deductions | | $ 9,096 |
| | | |
| Disposable income | | $ (20) |

Since the debtor's plan pays more than this amount to unsecured creditors,[5] it satisfies the disposable income test.

B.

The court is of course aware that, as a number of reported decisions have observed, the "means test" calculations sometimes yield anomalous results, in that a debtor may show little or no disposable income using the calculations but may in fact have significant surplus income that could be used to pay unsecured creditors. This is perhaps the inevitable result of a mechanical methodology that relies heavily on artificial assumptions. Courts have reacted to these anomalous situations in a number of ways. Some have said that the means test calculation is what Congress has required and accordingly is what governs. *See, e.g., In re Barr*, 341 B.R. 181 (Bankr. M.D. N.C. 2006); *In re Alexander*, 344 B.R. 742 (Bankr. E.D. N.C. 2006). Others have articulated various rationales for disregarding the means test calculation when it leads to a seriously-distorted result. *See, e.g., In re Hardacre,* 338 B.R, 718 (Bankr. N.D. Tex. 2006) (stating in dicta that "projected disposable income" is forward-looking standard and denying confirmation where above-median debtor deducted for means test purposes full amount of both the IRS allowance for ownership expenses of her house and car and the underlying unsecured

---

[5] The amount that would be available for unsecured claims (including the non-priority portion of the IRS claim) is as follows:

|  | Mo. Pmt. | Mos |  |
|---|---|---|---|
| Plan payments | $ 1,072 | 60 | $ 64,320 |
| Trustee's commission |  |  | $ (6,432) |
| Priority tax claims |  |  | $(17,055) |
| Available for unsecured |  |  | $ 40,833 |
| Unsecured claims |  |  | $ 257,528 |
| % dividend |  |  | 16% |

debt against them); *In re Edmunds*, 350 B.R. 636 (Bankr. D. S.C. 2006) (holding that projected disposable income for above-median income debtor is not fixed by means test calculation that includes expenses that would not actually be incurred under plan, such as car payments for car to be surrendered, and that income, likewise, is forward-looking determination based on circumstances at confirmation). Without attempting to enter into the debate, the court need only observe that this is not a case in which the debtor is living high on the hog at her creditors' expense or whose schedules on their face show significant surplus income that is not being applied to a plan. Nor is it a case in which the means test reaches a distorted result because, for example, the debtor is claiming a deduction for secured debt that will not be paid because the collateral will be surrendered. Nor, finally, is this a case in which the debtor had little or no income in the period leading up to the bankruptcy filing, such that "current monthly income" is not a fair reflection of the debtor's income on a going-forward basis. Accordingly, even assuming that there are circumstances under which a court may depart from the statutory means test calculation in determining projected disposable income, this is not such a case.

C.

There remains, to be sure, the issue of good faith. A chapter 13 plan may be denied confirmation if either the case itself was not filed in good faith or the plan was not proposed in good faith. No evidence was presented at the hearing that the <u>case</u> was not filed in good faith, and the court did not understand the United States to be making such an assertion. The United States did, however, argue that the <u>plan</u> was not proposed in good faith because the debtor was not devoting all reasonably available income to the payment of her debts. Although a number of courts have taken the position that Congress, when it enacted the disposable income test,

11

removed ability to pay as a component of the good faith, it seems clear that in the Fourth Circuit ability to pay may be considered on the issue of good faith even when the disposable income test is satisfied. *See Solomon v. Cosby (In re Solomon)*, 67 F.3d 1128 (4th Cir. 1995) (holding that "disposable income" for purpose of § 1325 does not include imputed income from exempt IRA's where debtor, although eligible to withdraw without penalty, was not actually doing so; but remanding for determination of good faith).

      The leading case in this circuit on good faith in chapter 13 is *Deans v. O'Donnell*, 692 F.2d 968 (4th Cir 1982). In *Deans*, the Fourth Circuit held that there was no statutory requirement for "substantial" payment of claims in chapter 13, and that "totality of the circumstances" was the test for good faith under § 1325(a)(3) when the debtor proposed no or only minimal payment of unsecured claims. *Id.* at 972. Although the Court cautioned that it was not attempting "either to be exhaustive or to establish a criteria 'check-list,'" it offered as examples of factors that might be considered, "the percentage of proposed repayment, . . . the debtor's financial situation, the period of time payment will be made, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing facts, and any unusual or exceptional problems facing the particular debtor." *Id.* In this case, the sole factors the United States has focused on is the percentage of repayment and what the United States contends are the debtor's unreasonable or unsubstantiated expenses. Before examining those, however, it is worth noting that most if not all of the other factors identified in *Deans* militate in favor of a finding of good faith. That is, the debtor has stable employment with some prospect of advancement; the debts are primarily the result of a business failure, rather than reckless overspending; the debtor has no prior history

of bankruptcy filings; plan payments will be made over the maximum period permitted under chapter 13; and the debtor has been honest with the court in representing facts. With respect to the percentage of payment, although the plan estimated a zero percent dividend on unsecured claims, the actual dividend, as noted, is likely to be closer to 16%. Although low, this is no lower than many plans confirmed by this court, and is more than some.

That leaves for consideration whether the debtor could reasonably afford to pay more than the $1,072 per month she has proposed to pay. The schedules I and J, as noted, reflect net monthly income of $6,327 and monthly expenses of $5,972, leaving a budget surplus of $355 per month. Many of the debtor's claimed expenses are less than the amounts permitted under the IRS collection standards, which themselves could hardly be characterized as generous. Having considered the debtor's testimony and the exhibits she offered in support of the claimed expenses, the court, while it would adjust some of the figures on the schedules I and J, cannot find that the sum of those adjustments would result in the bottom line exceeding the amount the debtor has agreed to pay. Accordingly, in light of all the circumstances, the court finds that the plan has been proposed in good faith, and the objection that it has not will be overruled.

D.

The trustee, having articulated a position that the debtor can afford to pay more than she has proposed, simultaneously argues that she cannot afford to pay even that amount. Truly, the trustee cannot have it both ways. And yet, the feasibility objection raises a serious concern. Every chapter 13 plan that pays claims at less than 100% is a delicate balance between requiring the debtor to pay enough, but not so much that the plan does not have a reasonable chance of success. Here, the debtor has committed to plan payments of $1,072 per month but has filed a

budget showing a monthly surplus of only $355 a month with which to make those payments. The debtor, it is true, has made the two payments that have become due so far, but testified that she had to dip into her daughter's savings to do so. It is admittedly difficult to see how the debtor can sustain those payments over the long term unless either her husband's business begins generating significant additional revenue or the debtor and her husband can find a way to reduce their expenses. (Indeed, the couple might be better off economically if the husband were to stay home and take care of the child, thus eliminating the child care expense.) Be that as it may, the court's normal practice, except where performance of a plan is plainly hopeless, has been to give a debtor who has successfully made payments through the date of the confirmation hearing the benefit of the doubt on the issue of feasibility. One can always live on beans and franks if sufficiently motivated. The court sees no reason to vary in this case from its past practice. For that reason, the feasibility objection will be overruled.

E.

Although the court will overrule the disposable income, good faith, and feasibility objections, the court does note that the plan, as filed, fails to explicitly address the Carmax secured claim. Since the monthly payment on the loan is an element of the debtor's budget, the plan obviously contemplates direct payment of the claim without alteration of the contract terms. A chapter 13 plan may "leave unaffected the rights of holders of any class of claims." § 1322(b)(2), Bankruptcy Code. But whatever the treatment, it should be explicitly set forth in the plan, since otherwise the trustee is left with no guidance on whether, and how, he should pay the filed claim. However, the court sees no need to require the formal filing of a modified plan

where the debtor's intent is clear, and the court will simply direct in the confirmation order that the claim be paid by the debtor.

O R D E R

For the foregoing reasons, it is

**ORDERED:**

1. The objections of Gerald M. O'Donnell, chapter 13 trustee, and the United States to confirmation of the plan filed by the debtor on November 15, 2006, are overruled, and the plan will be confirmed with the following modification: "The secured claim of CarMax Auto Finance will be paid directly by the debtor in accordance with the contract terms."

2. The trustee shall submit for entry a standard form of confirmation order and wage order.

3. The clerk will mail a copy of this memorandum opinion and order, or give electronic notice of its entry, to the parties listed below.

Date: _____           _____
                                       Stephen S. Mitchell
Alexandria, Virginia                   United States Bankruptcy Judge

Copies to:

Angela Jarrar
1772 Westwind Way
McLean, VA 22102
Debtor *pro se*

Gerald M. O'Donnell, Esquire
211 North Union St., Suite 240
Alexandria, VA  22314
Chapter 13 trustee

Robert K. Coulter, Esquire
Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314